No. 8637.

## TALBURT ET AL. *v.* THE BERKSHIRE LIFE INSURANCE COMPANY.

MORTGAGE.—*Assumption of Payment.*—*Deed.*— *Mistake.*— *Correction.*— *Contract.*—*Rescission.*—A. mortgaged lands to B., and then sold the lands to C., who agreed to pay the mortgage; but the conveyance, which recited C.'s agreement, by mistake, did not describe the property. Subsequently, A. and C. rescinded the contract (C. never having been in possession) before B. had notified C. that he accepted him for the debt.

*Held,* that B. could not recover a personal judgment against C. for the mortgage debt, nor could he compel a correction of the deed.

SPECIAL FINDING.—*Practice.*—When the court finds the facts specially with its conclusions of law thereon under the statute (R. S. 1881, section 551), a fact in issue, concerning which there is no finding, is deemed not proven.

APPEAL.—*Notice.*— *Waiver.*—*Dismissal.*—The right to have an appeal dismissed for want of notice to parties to the judgment, who have not appealed, is waived by a submission of the cause by agreement.

WITNESS.—*Cross-Examination.*—*Evidence.*—*Harmless Error.*—It is error to allow a party to call a witness to contradict an irrelevant statement of his adversary's witness, drawn out on cross-examination; but, if the matter be so entirely irrelevant that it can not influence the result, the error will not be available.

From the Marion Superior Court.

*S. Claypool, H. C. Newcomb* and *W. A. Ketcham,* for appellants.

*W. Henderson* and *M. B. Williams,* for appellee.

BICKNELL, C. C.—Hutchings and wife mortgaged land to the appellee to secure $3,000 with interest; the mortgage became due by non-payment of the interest. Hutchings sold the land to Talburt, who assumed the mortgage debt, and agreed to pay it. Hutchings and wife, intending to convey the land to Talburt, made him a deed, in which the land, instead of being described as lots 217 and 218, which were owned and mortgaged by Hutchings, was described as lots 117 and 118, which Hutchings never owned. Hutchings became insolvent. Talburt, after paying three or four instalments of interest, refused to pay any more, and he and Hutchings re-

scinded their contract.   The appellee then brought this action against Hutchings and wife, Talburt and wife, and several judgment creditors of Hutchings, who had obtained their judgments after the date of Talburt's deed.   The complaint prayed for judgment against Hutchings and Talburt for the debt and interest, and for foreclosure of the mortgage, and for the correction of the deed to Talburt.   Talburt and wife and Hutchings and wife answered by a general denial.   Talburt also answered separately as to so much of the complaint as sought a personal judgment against him.   The defendant Mary C. Hutchings also answered separately as to so much of the complaint as sought correction of the mistake.   Most of the judgment creditors failed to appear, and as to them the complaint was taken as confessed ; some of them had been notified by publication only.

The first paragraph of Talburt's separate answer alleged that he never had notice of plaintiff's acceptance of his supposed promise to pay said debt; that, before the mistake in the deed was discovered, Hutchings became insolvent, and judgments were rendered against him to an amount exceeding the value of the land, and that thereupon he and Hutchings had rescinded their contract, and that the consideration of his said promise had failed.

The separate answer of Mary Hutchings averred, in substance, that she made no mistake in the deed to Talburt, and never intended to convey to him lots 217 and 218.

The appellee replied to the separate answer of Talburt in two paragraphs :

1st. In denial.

2d. That on November 13th, 1876, she notified said Talburt, that she accepted his agreement to pay said mortgage debt, and requested him to pay an instalment of interest then due, which said Talburt paid, and that said rescission was made afterwards and with full knowledge that plaintiff had accepted said Talburt's agreement to pay said mortgage debt.

The plaintiff, and the defendants Hutchings and wife, Tal-

burt and wife, and a few of the judgment creditors, who had filed formal answers, submitted the issues to the court for trial, and the plaintiff and the defendant Talburt requested the court to state the facts in writing and the conclusions of law thereupon separately. This the court did as follows:

1st. The court found that the amount due upon the notes and mortgage for principal, interest, costs and attorneys' fees, is $3,877.10.

2d. That, at the date of the mortgage, Hutchings owned the mortgaged property.

3d. That Hutchings and wife executed the mortgage, as stated in the complaint.

4th. That, on the 13th of February, 1875, Hutchings, still being the owner of the mortgaged land, sold it to Talburt for $5,000, of which Talburt paid $2,000, by a conveyance of real estate, and for the remainder assumed the payment of the mortgage debt to the plaintiff, and thereupon Hutchings and wife, on the day last mentioned, made a deed to Talburt, intending thereby to convey to him the mortgaged property, but by mistake described it as lots 117 and 118, instead of lots 217 and 218, it being stated in the deed that Talburt, as part payment of the purchase-money, agreed to pay plaintiff the said mortgage debt.

5th. That, shortly after the execution of this deed, Hutchings informed Henderson, who was plaintiff's agent, that Talburt had agreed to pay plaintiff said mortgage debt, and thereupon said agent notified Talburt of an instalment of interest coming due, which instalment and three other semi-annual instalments of interest said Talburt paid, and kept the interest paid until May 14th, 1877; that in December, 1877, plaintiff's said agent again wrote to Talburt, about the interest then due, and Talburt replied that he had no longer any arrangement to pay the same, but said nothing about a rescission of the contract.

6th. That Hutchings discovered the mistake in the deed in the spring or fall of 1876, but Talburt did not know about it

until March, 1877; and then Hutchings and Talburt agreed that said sale of the mortgaged property should be rescinded, Hutchings agreeing thereto, in consideration that Talburt would permit him to retain the property, and Talburt agreeing thereto because he thought Hutchings could not make him a good title to lots 217 and 218, and because he expected, by such rescission, to avoid liability for the remainder of the mortgage debt; that Talburt never reconveyed lots 117 or 118 to Hutchings, nor quitclaimed them to the owner thereof, and that plaintiff's agent had no knowledge of such attempted rescission, until June, 1878, when he learned it from Talburt's answer in this case.

7th. That, after the conveyance from Hutchings to Talburt, the judgments were recovered, a list of which was annexed to Talburt's answer, and all of them, except one, were in force at the date of the alleged rescission.

8th. By the mortgage, which was duly recorded, the principal becomes due on default of payment of the interest, and by such default the principal has become due, and the plaintiff is entitled to foreclosure.

9th. That the conveyance from Hutchings to Talburt ought to be corrected by inserting therein lots 217 and 218, in place of lots 117 and 118.

10th. That said defendants, the judgment creditors, have junior liens upon the mortgaged premises, in a specified order, and in certain specified amounts, except Sinker, Davis & Co., who have no interest.

Wherefore, from the above named facts, as conclusions of law, it is found by the court that the defendants John D. Hutchings and Charles W. Talburt are personally liable to the plaintiff on the notes set out in the complaint.

Defendants Mary C. Hutchings and Talburt severally, and defendants Jonas Miller and Samuel Miller jointly, excepted to the said conclusions of law, and also moved for a new trial. The motions were overruled, and said defendants excepted. Judgment was rendered upon the finding, to wit: Personal

judgments against Hutchings and Talburt severally for the amount of the debt, interest and attorneys' fees, and for the correction of the deed to Talburt, and that his title to lots 217 and 218 be quieted, and for foreclosure and sale of the mortgaged property, and the application of the proceeds, 1st, in payment of costs; 2d, in payment of the plaintiff's judgment; 3d, the remainder, if any, to be paid to Talburt; 4th, if there be any deficiency, the amount thereof to be levied, first, of Talburt's property, or, if he have not enough, then of Hutchings' property. The defendant Talburt appealed to the superior court in general term, where errors were assigned as follows:

Talburt assigned error in rendering a personal judgment against him, and in decreeing correction of the deed, and in overruling his motion for a new trial.

Mary Hutchings assigned error in decreeing correction of said deed as to her, and in rendering any judgment against her except for foreclosure, and in overruling her motion for a new trial.

Jonas Miller, one of the judgment creditors, assigned error in decreeing the correction of said deed as to him, and in overruling his motion for a new trial.

The court in general term affirmed the judgment of the court in special term, and said Talburt and Mary Hutchings appealed to this court, assigning error in such affirmance.

This cause was submitted by agreement on the 8th of May, 1880; six months thereafter, on the 9th of November, 1880, the appellee moved to dismiss the appeal, for want of notice to the other parties to the judgment.

It was held, in *Field* v. *Burton,* 71 Ind. 380, that the rule, which requires appeals to be dismissed for want of such notice, is somewhat technical, and that any benefit or advantage therefrom may be waived; and in *Brooks* v. *Doxey,* 72 Ind. 327, it was held that where a cause has been submitted by agreement, on an assignment of error calling in question a ruling upon a motion for a new trial, such submission is a waiver of all

objections to any alleged defect of parties to the appeal. The motion to dismiss the appeal is, therefore, overruled.

One of the reasons alleged for a new trial was, permitting the plaintiff to call Henderson as a witness, to contradict the answer of Hutchings to a collateral and improper question put to him by the plaintiff.

It appears by the bill of exceptions, that, after the plaintiff had finished her evidence in chief and had rested, John D. Hutchings was called as a witness for defendants, and that the plaintiff cross-examined him, and, in the course of the cross-examination, asked him whether he notified Wm. Henderson, the plaintiff's agent, of the rescission of the contract, to which he replied, he did, and that after the defendants had completed their testimony, and had rested, the plaintiff was permitted to recall Henderson to contradict said answer of Hutchings.

Undoubtedly this was error. A cross-examination must be limited to the matters embraced in the direct examination. *Indianapolis, etc., R. W. Co.* v. *Ferguson,* 42 Ind. 243 ; *Toledo, etc., R. W. Co.* v. *Harris,* 49 Ind. 119. And besides, the question being upon a collateral matter, the plaintiff was bound by the answer of the witness, and had no right to contradict it. 1 Greenl. Ev., section 449. Our statute, Practice Act, section 244, which provides that " The party producing a witness * * may in all cases contradict him by other evidence," does not apply to cross-examination of a witness produced by the adverse party ; he " can not be cross-examined as to any fact, which is collateral and irrelevant to the issue, merely for the purpose of contradicting him." 1 Greenleaf, section 449. The error, however, in the present case, seems to have been a harmless one, because all the evidence shows that the rescission was made without the knowledge of the plaintiff, and without consulting the plaintiff; and it could make no difference, as to the legal effect of the rescission, whether the plaintiff was afterwards notified of it or not. Such an error will not warrant the reversal of the judgment.

The principal reasons alleged in the motions for a new trial are, that the finding was not sustained by sufficient evidence, and is contrary to law; and the questions are, was the appellee entitled to a personal judgment against Talburt, or to a correction of the mistake in the deed, to which she was not a party? The deed is in the statutory form, 1 R. S. 1876, p. 364, with this addition: "Subject to a mortgage to secure the payment of one principal note for $3,000, and ten interest notes for $150 each, all dated May 14th, 1874, one of said notes having been paid; all of said notes are signed by J. D. Hutchings, and payable to the Berkshire Life Insurance Company, which note, and the interest accrued, said C. W. Talburt assumes and agrees to pay, as a part of the consideration, for the above described real estate, subject, also, to the taxes of 1875." The acceptance of such a deed was equivalent to a promise by Talburt to Hutchings to pay the mortgage debt as part of the price of the land he was buying.

If there had been no mistake in the deed, if Talburt had received the consideration for his promise, then, under our code, the plaintiff could have enforced the fulfilment of the promise, and Hutchings, as trustee of an express trust, might have maintained a suit against Talburt upon the promise, without joining with him the insurance company; or, in such a case, the insurance company might sue for foreclosure, and unite with her complaint a claim for judgment against Talburt, on his promise to pay the mortgage debt. Practice Act, sec. 72. But where there is no consideration for such a promise, or where the consideration has failed, there is a good defence to such an action, whether brought by the promisee or by the beneficiary. If Hutchings had conveyed to Talburt the lots he bought, then it might have been said, that Hutchings, for the benefit of the insurance company, had paid Talburt the consideration of the promise, but, without such conveyance, there seems to be a want of consideration.

Talburt never had possession of any of the lots; the fact, that, before he discovered the mistake, he paid some of the in-

terest, made no change in the legal rights of the parties, the plaintiff's naked receipt of the interest amounted to nothing. She paid nothing for Talburt's assumption of the debt; she gave up no claim on Hutchings; she made no agreement for forbearance; when Hutchings did not pay the interest, she took it from Talburt, that is all; and Talburt paid it under a mistake, supposing he had received the consideration for his promise, when he really had not. The fact, however, that Talburt had a deed, which he might have had corrected by a suit in equity, so fixed the relations of Talburt and Hutchings that neither of them could rescind the contract without the other's consent.

Talburt, having paid part of the price, could have had the deed corrected, and so Hutchings, if Talburt should refuse to complete the contract by reason of the mistake, could by a suit in equity compel him to accept a corrected deed; but neither of these parties desired to correct the mistake; they chose to rescind the contract, and this they had a right to do, unless some rights of the appellee had intervened to prevent a rescission. There could be no such rights unless the appellee, when notified of Talburt's assumption of the debt, accepted him as her debtor. After such acceptance, Hutchings and Talburt would have no longer any right to rescind, and the appellee might be properly subrogated to all the original rights of Hutchings in reference to the correction of the deed. No such acceptance is alleged in the complaint, but after Talburt, in the first paragraph of his separate answer, had pleaded the rescission of the contract, the plaintiff replied that on November 13th, 1876, she notified Talburt that she accepted his agreement to pay said mortgage debt, and alleged that said rescission was made after said 13th of November, 1876, and with full knowledge of plaintiff's acceptance of said Talburt's agreement to pay said mortgage debt. The question of acceptance thus became one of the issues in the case. It was incumbent on the plaintiff to prove such acceptance. Without

such acceptance no rights of the appellee had intervened to prevent a rescission of the contract by Hutchings and Talburt.

It was held in *Graham* v. *The State, ex rel.*, 66 Ind. 386, and in several subsequent cases, cited in *Ex Parte Walls*, 73 Ind. 95, that where there is a special finding under the statute, if the facts proved and found leave some issues in the case undetermined, those issues must be regarded as not proved by the party having the burden of proof. In the case at bar, the special finding leaves the issue on the question of acceptance entirely undetermined.

One of the issues, therefore, which the plaintiff was bound to prove, in order to recover a personal judgment against Talburt, and in order to obtain a decree for the correction of the deed, must be regarded as not proved; and it follows that the conclusions of law of the superior court, at its special term, were erroneous, and that the plaintiff was not entitled to a personal judgment against Talburt, nor to a correction of said mistake. *Vannoy* v. *Duprez*, 72 Ind. 26. The finding, also, was contrary to the evidence. The judgment of the superior court, in general term, affirming the judgment of the court in special term, ought to be reversed, and the cause should be remanded for a new trial.

PER CURIAM.—It is therefore ordered by the court, upon the foregoing opinion, that the judgment of the court below be and it is hereby in all things reversed, at the costs of the appellee, and this cause is remanded for a new trial.

ON PETITION FOR A REHEARING.

BICKNELL, C. C.—The petition for a rehearing takes the following positions:

1. That the objection, for want of notice to the other parties, was not waived by the submission of the cause by agreement.

2. That, although Talburt did not receive the consideration of his promise, his liability was the same as if he had received such consideration.

3. That, although the deed conveyed lots 117 and 118, and Talburt never took possession of either, yet such deed passed to Talburt the possession of lots 217 and 218, although in fact he had no such possession.

4. That Talburt was liable to the appellee, whether she accepted him as her debtor before the rescission of the contract, or afterwards.

5. That, if such acceptance was necessary to be proved, it was proved, and that the fact of such acceptance was embraced in the special finding of the court below.

All of these positions are shown to be untenable by the opinion heretofore given. As to the last position, the plaintiff's reply contained the statement " that on Nov. 13th, 1876, she notified Talburt that she accepted his agreement to pay said mortgage debt, and that said rescission was made after said notice, and with full knowledge that plaintiff had accepted said Talburt's agreement to pay said mortgage debt."

This reply was deemed to be controverted, as upon a direct denial or avoidance (Practice Act), sec. 74, and the burden of proof was upon the plaintiff. The special finding leaves that issue entirely undetermined. A special finding must ascertain the facts and not merely report the evidence. *Parker* v. *Hubble*, 75 Ind. 580.

The petition for a rehearing ought to be overruled.

PER CURIAM.—The petition for a rehearing is overruled.