Argued June 20, decided July 9, 1912.

# TAFFE *v.* SMYTH.

[125 Pac. 308.]

APPEAL AND ERROR—OBJECTION BELOW—FINDINGS—REVIEW.

1. Findings of fact by the trial court on all disputed questions in issue will not be disturbed on appeal unless the bill of exceptions shows that application was made to it for further or different findings, and that the request was denied.

APPEAL AND ERROR—HARMLESS ERROR—ERRONEOUS ADMISSION OF EVI-
    DENCE.

2. The action of the court trying a case without a jury, in admitting over objection and exception evidence which it thereafter determined was incompetent, is not prejudicial.

APPEAL AND ERROR—QUESTIONS REVIEWABLE—POWER OF SUPREME COURT
    —"TRIAL DE NOVO."

3. Under Section 3, Article VII, of the Constitution, as amended November 8, 1910 (L. O. L., p. xxiv), requiring the Supreme Court on appeal, where either party has attached to the bill of exceptions the whole testimony, to direct the proper judgment, provided it can determine what judgment should be entered, the Supreme Court on appeal, where the whole testimony is attached to the bill of exceptions, must examine the evidence and affirm, modify, or reverse the judgment as is required in appeals in suits in equity, except that in an action at law the court will only consider errors properly assigned, but such review is not a trial *de novo* which implies a re-examination of the original evidence as if no previous hearing had occurred.

APPEAL AND ERROR—JUDGMENTS REVIEWABLE—FINAL "JUDGMENT."

4. A judgment which determines the issues involved in six of the seven causes of action is a final judgment and appealable under Section 548, L. O. L.

APPEAL AND ERROR—QUESTIONS REVIEWABLE—JURISDICTION OF SUPREME
    COURT.

5. Where an appeal is taken from a judgment determining six of the seven causes of action alleged, rendered on the court making findings of fact on such six issues, but omitting to make any findings on the remaining issue, the Supreme Court, under Section 3, Article VII, of the Constitution, as amended November 8, 1910 (L. O. L., p. xxiv), must examine the entire testimony given at the trial, segregating the part applicable to the cause of action on which no finding ·was made, and make a conclusion of fact in relation thereto.

EASEMENTS—COMPENSATION.

6. Plaintiff permitted defendants, engaged in constructing a canal, to lay on his premises underground pipes to his water tank, and to use water, for which defendants agreed to pay $1.00 per day. Defendants subsequently discontinued the use of plaintiff's tank and disconnected their pipes therefrom. Thereafter plaintiff notified defendants that he

would demand as rental $2.50 per day from the date of the notice for the use of the water tank and his land for conveying water through the pipes. Defendants made no response to the notice, and permitted the pipes to remain. *Held,* that plaintiff was not entitled to compensation for the use of his land by defendants after such notice.

COSTS—APPEAL—LIABILITY.

7. Where the correct conclusion was reached by the trial court, though it failed to make a finding of fact on one issue, the defeated party, though obtaining on appeal a finding of fact as to such issue, was liable for the costs. .

From Multnomah: JOHN P. KAVANAUGH, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by I. H. Taffe against Sidney Smyth and W. N. Jones, partners as Smyth & Jones, to recover money. Seven separate causes of action are set forth in the complaint wherein facts are alleged from which it was asserted that there was due from defendants to plaintiff on the several causes sums as follows: First, $398.08; second, $141.60; third, $525; fourth, $365; fifth, $715; sixth, $700; and seventh, $120—amounting to $2,964.68, on account of which there was credited $678.50, thus leaving due $2,286.18, for which judgment was demanded.

The answer denied that either of the sums thus stated was owing, but admitted the validity of parts of the causes of action, and that there was due thereon sums of money, to wit: First, $205.58; third, $37.50; fourth, $30; sixth, $50; and seventh, $10—aggregating $333.08. All liability on the second and fifth causes was denied. For a further defense and by way of counterclaim, the answer alleged facts showing that defendants were entitled to a credit on account of certain items, setting forth a list thereof, amounting to $1,209.94 instead of $678.50 as admitted in the complaint. Judgment was demanded by defendants for $854.36, or for $22.50 less than appeared from their statement of the account.

The reply having put in issue the allegations of new matter in the answer, the cause was tried without a jury,

and, from the testimony taken, findings of fact were made in favor of plaintiff upon the several causes of action as follows: First, $225.58; second, $95.60; third, $300; fourth, $40; fifth, $———; sixth, $150; and seventh, $40—aggregating $851.18. The court further found that defendants were entitled to $1,099.90 as a credit on account of all the causes of action, from which sum was deducted $851.18 that was found to be owing from them to plaintiff, thereby leaving due from him to them the remainder, or $248.72, for which judgment was given, and he appeals.                                    AFFIRMED.

For appellant there was a brief over the names of *Messrs. Huntington & Wilson,* with an oral argument by *Mr. Bela S. Huntington.*

For respondents there was a brief and an oral argument by *Mr. Samuel B. Huston.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. It is maintained by plaintiff's counsel that no evidence was received tending to support several findings of fact as made, and, such being the case, errors were committed in these respects. When an action is tried by stipulation without the intervention of a jury, and from the evidence received findings of fact are made upon all the disputed questions to which the parties in the pleadings have narrowed their respective allegations, such conclusions will not be disturbed on appeal unless it satisfactorily appears, from an inspection of the bill of exceptions, that application was made to the trial court for further or different findings, and the request therefor denied. *Hicklin* v. *McClear,* 18 Or. 126 (22 Pac. 1057); *Umatilla Irrigation Co.* v. *Barnhart,* 22 Or. 389 (30 Pac. 37); *McClung* v. *McPherson,* 47 Or. 73 (81 Pac. 567: 82 Pac. 13).

In the case at bar no exception was taken to any of the findings, or motion made to set either of them aside, nor was any other finding submitted with a request that it

be adopted in lieu of any conclusion of fact that was reached. If any error was committed as alleged, the action of the trial court in that respect is unavailing.

2. The defendant Jones on direct examination was asked by his counsel if he had ever made any objection to a written statement of account submitted by the plaintiff, and replied:

"No, I never did. Q. Why not?"

An objection to the inquiry, on the ground that it was incompetent, having been overruled and an exception allowed, the witness answered:

"When we first went to Celilo we were told that we would have trouble with Mr. Taffe before we got out of there."

Plaintiff's counsel, interrupting, moved to strike out the answer, whereupon defendant's counsel stated:

"I want to show that he was warned, which is the reason why he did not object to this bill."

The court thereupon remarked:

"Well, I will admit the evidence and consider it on the motion to strike."

To this ruling an exception was taken. The witness, continuing, said:

"It was represented to us that Mr. Taffe loved a lawsuit; and had them all the time, and of course we wanted to avoid a lawsuit as long as possible, and for that reason we did not object to what I considered his preposterous charges until after we had finished work up there."

The testimony thus quoted, the objections interposed, the statements of respective counsel relating to the matter, and the exceptions noted, are practically repeated in respect to the testimony of the defendant Smyth on the same subject. In ruling on objections to questions submitted to Smyth, the court observed:

"I do not believe that testimony is competent. * * I admitted it on the part of the other witness, and I will admit it now, although I have my doubts about it. It would seem to me rather it should be a reason why they should object to it at once"—referring to plaintiff's bill of items which had been tendered to the defendants.

In the trial of an action without a jury, the admission, over objection and exception, of immaterial evidence cannot injure a party unless he is prejudiced thereby. The court having stated that the testimony, the receipt of which is complained of, was not considered competent, such comment rebuts any inference that the sworn declarations of the witnesses tended in any manner to induce the findings of fact that were made. The plaintiff was evidently not prejudiced in any manner by the admission of such testimony.

It will be remembered that no findings of fact was made on the issue involved in the fifth cause of action. The complaint relating thereto avers in effect that, at the special instance and request of the defendants, the plaintiff permitted them to lay and maintain on his premises water pipes and to use in connection therewith his water tank from November 25, 1907, to September 10, 1908, at $2.50 per day, amounting to $715, no part of which had been paid except $678.50 hereinbefore referred to as the sum to be credited on the entire account. The answer to this part of the complaint admitted that, during the time specified, defendants had some pipes buried on plaintiff's land, but denied that his tank was used for any part of such time, or that they agreed to give $2.50 per day or any other sum, or promised to pay $715 or any other amount for the privilege alleged. For a further defense to such cause of action, the answer stated in substance that the pipes under ground do not interfere with plaintiff's use of the premises, and that such conduits are the pipes referred to in paragraph 2 of

the fourth separate cause of action; and denied that no other payments have been made than as alleged, but averred that defendants had fully paid plaintiff for such use prior to the commencement of this action. The paragraph thus adverted to charges a use by the defendants of the same property from November 25, 1906, to November 25, 1907, at the agreed price of $365; no part of which had been paid except the sum stated as a credit on the entire account. The reply denied the allegations of new matter contained in this part of the answer.

3. No finding of fact having been made upon the material issue involving the sum of $715 as set forth in the fifth cause of action, the failure in this respect, under the rule formerly prevailing, would not only have necessitated a reversal of the judgment, but required the cause to be remanded for a new trial. *Henderson* v. *Reynolds,* 57 Or. 186. (110 Pac. 979) ; *Darling* v. *Miles,* 57 Or. 593 (111 Pac. 702: 112 Pac. 1084). Section 3 of Article 7 of the constitution was amended November 8, 1910, and, as far as material herein, reads as follows:

"Until otherwise provided by law, upon appeal of any case, to the Supreme Court, either party may have attached to the bill of exceptions the whole testimony, the instructions of the court to the jury, and any other matter material to the decision of the appeal. If the Supreme Court shall be of the opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed notwithstanding any error committed during the trial or, if, in any respect, the judgment appealed from should be changed, and the Supreme Court shall be of the opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the Supreme Court." 1 L. O. L. p. xxiv.

It has not been "otherwise provided by law" that any change in the practice on appeal should be inaugurated, differing from that prescribed in the amendment quoted. This alteration in the fundamental law was evidently induced by an earnest desire on the part of the electors of Oregon to promote the peace of society by having all controversies in judicial tribunals ultimately determined at only one trial in the circuit court, and one review of a judgment on appeal to the Supreme Court. To effectuate this purpose, it is essential that, when from an examination of the entire testimony given at the trial of an action, of the instructions of the court to the jury and of other material matters, it is possible for the Supreme Court on appeal to determine the issues involved, the amended organic act demands a final conclusion of the matter. Nor is such a review a trial *de novo,* for that term implies a re-examination at which original evidence may be received as if no previous hearing had ever occurred, and such trial applies only to appeals from judgments rendered in the county court and in justices' courts. The statute regulating these matters reads as follows:

"Upon an appeal from a judgment, the same shall be reviewed as to questions of law appearing upon the transcript, and shall only be reversed or modified for errors substantially affecting the rights of the appellant; but upon an appeal from the judgment of a county court or justice's court, the action shall be tried anew, upon substantially the issues tried in the court below; and upon an appeal from a decree given in any court the suit shall be tried anew upon the transcript and evidence accompanying it." Section 556, L. O. L.

It will be remembered that the amended organic act declares that, "if, in any respect, the judgment appealed from should be changed, and the Supreme Court shall be of the opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and

with like effect as decrees are now entered in equity cases on appeal to the Supreme Court." Decrees in equity, involving the merits of a cause, are affirmed, modified, or reversed on appeal in the Supreme Court after a careful examination of the evidence accompanying the transcript. Construing the provisions of our statute relating to the trial of apepals in the Supreme Court in connection with the amended organic act, the declaration therein as last quoted, demands the same examination on the trial of an appeal from a judgment in a law action, when either party has caused to be attached to the bill of exceptions the whole testimony, etc., as is required in the trial of appeals from decrees in suits in equity, except that in the law action it is only errors properly assigned that will be considered.

4. In the case at bar the determination by the trial court of the issues involved in six of the causes of action is, as to them, a final judgment from which an appeal may be taken. Section 548, L. O. L.

5. Jurisdiction of the appeal having been secured by this court, it is authorized, under the amended act in question, to examine the entire testimony given at the trial, segregating the part applicable to the cause of action on which no finding was made, and thereupon to make a conclusion of fact in relation thereto.

Findings having been made on all but one of the material issues, the omission in this respect was evidently inadvertent and not a willful violation of the duty enjoined by law upon the trial court to make and file findings of fact in the trial of an action without a jury. Section 158, L. O. L. But, however the failure may have occurred, the amended constitution imposes upon the Supreme Court, "until otherwise provided by law," the obligation to determine on appeal what judgment should have been entered in the court below, when this can be

done from an inspection of the entire proceedings in that tribunal if they are properly brought up for review.

6. In the case at bar the certificate of the trial judge appended to a transcript of the testimony is to the effect that the written copy sent up contains all the evidence offered by either party at the trial of the cause. Carefully examining, in the light of the amended organic act, all the testimony given at the trial and detailing the part thereof applicable to the fourth and fifth causes of action referred to in the answer, it appears that the plaintiff permitted the defendants, who were engaged in constructing at Celilo, Oregon, a government canal, to lay on his premises pipes, to connect them with his tank, and to use water thus obtained for which they agreed to pay him $1.00 per day. The plaintiff testified that such use was to continue for the term of one year from November 25, 1906, and his fourth cause of action charges the defendants therefor $365. The plaintiff's testimony in this particular is corroborated by that of his wife. The defendants, however, severally testified that they were to pay him the stipulated sum for the time only that they used his tank; that discovering the supply of water afforded by such means was inadequate to their demands, the defendants, after thirty days' use, disconnected their pipes from the tank and thereafter took no water from such reservoir. The defendants' testimony is corroborated by that of other witnesses in respect to the length of time for which payment was to be made for such use, and that it was not to be for a year, but only for the part thereof the tank was employed as a water supply. For this use the trial court found that $40 was due from defendants to plaintiff. The conclusion thus reached is supported by some testimony, but whether or not the weight of evidence upholds the finding as made is not subject to review and is referred to here only because the answer alludes to

the fourth cause of action wherein the value of such use is involved.

A letter, of which the following is a copy, was duly mailed and received by the persons to whom it was addressed, to wit:

"I. H. Taffe, proprietor of the Celilo Fishery, Celilo, Oregon.

                                    November 25, 1907.

Messrs. Smyth & Jones,
        Contractors, Celilo Government Canal,
            Celilo, Oregon.

Gentlemen: On the 25th of November, 1906, the verbal contract which was agreed upon between your firm and myself expired yesterday. This contract, as you know, was for the use of my water tank and use of my land for the purpose of conveying water through pipes where required. From this date on, or while your pipes remain on my land, the rental will be $2.50, two dollars and fifty cents per day.

                        Yours respectfully,
                                I. H. Taffe."

The plaintiff testified that no answer to this notice was ever received, nor was any objection made to him by the defendants in respect to paying the sum so demanded. On cross-examination the plaintiff was asked:

"When you wrote them that letter, they then took the pipe out of the ground where it went up by the house around back on your place?"

He replied: "It was out before that; before writing that letter."

Q. "What did you have reference to in this letter when you said: 'From this date on, or while your pipes remain on my land, the rental will be $2.50.' Now, you say the pipe had been taken out before."

A. "Yes, sir; but there were other pipes—they had pipes laid to their boilers all the time while they were working on that canal."

Q. "It was not the pipe then going to the tank?"
A. "No, sir."

Q. "What you were going to charge them the $2.50 a day for was the pipes leading to the boilers?"

A. "Yes, sir; and trespassing generally over my place."

Q. "It was not for the use of water?"

A. "No, they were pumping their own water then."

Q. "And had torn up their pipes?"

A. "Torn up this big pipe."

Q. "That led to the tank?"

A. "Yes, they moved it to another place."

A. K. Bentley, the defendants' superintendent at Celilo, testified that, when the conduit was disconnected from plaintiff's tank, the pipe thus used, which was laid under ground, was not taken up, except sufficient thereof to complete his employers' pumping system.

A. E. Hammond, a civil engineer in defendants' employ, testified that the use of plaintiff's tank was discontinued because the reservoir was not of sufficient capacity to store the quantity of water needed; that the pipes leading to and from the tank were exposed to freezing weather; and that, in order to prevent delay of their work from ice, the defendants were compelled to build a tank of their own, and, disconnecting from plaintiff's tank their pipes, they shifted a part of them, through which water was pumped to the new reservoir.

The charge in the fifth cause of action was for a use of the tank and an exercise of the right to lay pipes on plaintiff's premises from November 25, 1907, to September 10, 1908. An alleged use of the tank, therefore, formed a part of the plaintiff's claim, but, since such use was discontinued long prior to November 25, 1907, it is evident that his real complaint was predicated, as he testified, on the trespass occasioned by the defendants' failure to remove the buried pipes from his premises. The defendants' previous use of the land having ceased prior to the receipt of the plaintiff's letter, they had no right to or estate in the real property which they there-

after exercised or held pursuant to the notice of the sum demanded. A careful examination of the entire testimony convinces us that no sum of money whatever is due plaintiff from the defendants on account of the fifth cause of action, which finding of fact is now made in lieu of the conclusion which the trial court should have reached on that branch of the case.

Nothing here said, however, is intended to prejudice the plaintiff's right to remove from his premises the pipes complained of, or to recover the reasonable expenses incident thereto, or the damages occasioned thereby.

7. Though plaintiff by this appeal secured a finding of fact as to one of the issues, the conclusion reached in respect thereto does not modify or reverse the judgment appealed from, and hence defendants will be entitled to their costs and disbursements in this court and in the court below.

It follows from these conclusions that the judgment should be affirmed, and it is so ordered.          AFFIRMED.

MR. JUSTICE BURNETT delivered the following dissenting opinion:

I agree with the opinion of Mr. Justice MOORE in its treatment of alleged errors in the admission of evidence, and so far as it holds that, in the absence of exceptions to the findings of fact, they must stand as the verdict of a jury and cannot be here assailed. So far, then, as the case depends upon the bill of exceptions, we must decline to re-examine those findings. I am compelled, however, to withhold my assent to the innovation sought to be ingrafted upon the judicial system of the State by the opinion to the effect that, without any examination or decision whatever by the circuit court upon a separate and distinct cause of action, this court may, in the first instance, consider the testimony reported with the bill of

exceptions and, as a tribunal of original jurisdiction, reach a conclusion and pronounce a judgment at law.

This might be a legitimate deduction if Section 3 of Article VII of the State Constitution, as amended by the plebiscite of November, 1910, were all there is to be considered of that expression of the popular will, but it is not. The preceding Section 2 reads thus:

"The courts, jurisdiction and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted until otherwise provided by law; but the Supreme Court may, in its own discretion, take original jurisdiction in *mandamus, quo warranto* and *habeas corpus* proceedings."

This section declares that, except in the three special proceedings noted, the great body of the law as laid down in the statutes and embodied in the decisions remains undisturbed and unchanged. The former judicial system, which abides even yet, requires that the circuit court shall, in the first instance, make findings of fact and conclusions of law on every material issue, and for its failure to do so its judgment is reversible on its face without a bill of exceptions.

In the case at bar there are seven distinct causes of action stated in the plaintiff's initial pleading. In effect there are seven complaints each requiring complete treatment by the trial court. That tribunal, however, as appears on the face of its record, has entirely ignored the fifth cause of action, although issue was joined upon it. This court decided in the case of *Chung* v. *Stephenson,* 50 Or. 244 (89 Pac. 386), that, "under our statutes, as the findings in law actions are entered in the journal, the failure of the trial court to find on a counter-claim may be reviewed on appeal, though no exception was taken to such failure to find." If that was a sound rule, then it is so now, for the judicial system remanis unchanged in that respect. This court is still only an appellate tribunal

except at its own discretion in *habeas corpus, quo warranto*, and *mandamus*. The mention of those exceptions excludes all other cases as subjects of original jurisdiction, yet, in effect, the court would assume that power universally if it undertakes the decision of a case of this kind which has not been heard and determined first by the circuit court. All we have before us on the fifth cause of action is a report of the testimony which might as well have been sent up by some referee, if we allow the court below to pass it by without examination.

If the circuit court can abdicate its function as a judicial tribunal and take up the role of a mere reporter as to one cause of action, it may do so as to all of them or in any case whatever. It is but a step farther to the situation where the trial court will entirely abandon its responsibility and delegate the preparation of its decision to the counsel of the party whom the judge, arbitrarily as a Persian cadi, may designate as a winner, complacently leaving it to this court to do tardy justice on appeal.

The revision of Article VII of the constitution does not obviate the necessity of the trial court passing upon questions of law and fact in the first instance in all cases before it on original jurisdiction. Because it has the witnesses personally present before it, hears them, and sees their manner of testifying, the litigants, as well as this court, are entitled primarily to the judgment of the circuit court on disputed questions of fact. This is eminently proper and ought to be so because of the conditions mentioned giving that court the better facility for reaching a just conclusion in any case.

Whether the omission to make findings of fact and conclusions of law on the fifth cause of action happened designedly or from mere inadvertence does not appear, nor is it necessary to decide. In either case, the litigants have been deprived of the benefit of the decision of a judge who personally heard the witnesses. This is an

error we cannot adequately correct on a mere paper hearing, and the judgment ought to be reversed and the cause remanded for trial *de novo*.